

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–747

| | |
|---|---|
| JOSEPH DODD<br><br>               APPELLANT<br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND S.D.,<br>MINOR CHILD<br><br>               APPELLEES | **Opinion Delivered** February 3, 2016<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>TENTH DIVISION<br>[NO. 60JV-13-1947]<br><br>HONORABLE JOYCE WILLIAMS<br>WARREN, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Joseph Dodd appeals from the June 16, 2015 Pulaski County Circuit Court order terminating his parental rights to his daughter, S.D. (DOB: 7-31-13). On appeal, Dodd argues that insufficient evidence existed to support termination of his rights and that the trial court erred in finding that termination was in the child's best interest. A review of the record does not show that the circuit court's decision was clearly erroneous. As such, we affirm.

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2015). In determining whether termination is in the child's best interest, the circuit court must consider the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of

the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii).

Additionally, the Arkansas Department of Human Services (DHS) must prove at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B). It is well settled that these cases are reviewed de novo on the record, but we do not reverse a termination order unless the circuit court's findings of clear and convincing evidence were clearly erroneous. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W. 3d 505 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.*

On December 1, 2013, DHS received a call from the hotline stating that there had been a report for "Abuse Threat of Harm." The child's mother, Brandi Galley, had been admitted to UAMS for having suicidal and homicidal ideations. The child's father, appellant Joseph Dodd, had tested positive for THC, methamphetamine, and benzodiazepine. On December 4, 2013, DHS petitioned for ex parte emergency custody and dependency-neglect, which the court granted. On December 11, 2013, the parties stipulated to probable cause. Dodd was allowed to visit S.D. but was also ordered to immediately complete a psychological evaluation and to submit to random drug screens. DHS was ordered to make a referral for DNA testing.

On February 19, 2014, the court adjudicated S.D. dependent-neglected due to neglect and parental unfitness. On February 27, 2014, Dodd was ordered to follow the

recommendations of the psychological evaluation, participate in individual and/or family counseling, take medication as prescribed, refrain from the use of illegal drugs, submit to a drug-and-alcohol assessment, submit to drug screens, attend AA/NA meetings at least twice a week, complete parenting classes, obtain safe and stable housing, maintain stable employment and income, and obtain a court order of paternity.

At the hearings on both May 22, 2014 and on September 11, 2014, the court found that Dodd had substantially complied by submitting to DNA testing, clean drug testing, drug treatment, stable housing, income, and visitation. The court noted the only thing he was lacking was the AA/NA sign-in sheets. At the permanency-planning hearing, the trial court found that Dodd had complied with the case plan and court orders, and the court authorized a plan to place custody of the juvenile with Dodd since he had been complying and making significant measurable progress. Dodd's visitation increased while the court ordered that the mother have no visitation with the juvenile pending the termination of her parental rights adjudication hearing.

On December 22, 2014, Dodd was awarded temporary custody of S.D. On January 20, 2015, a petition for termination of parental rights was filed against Brandi Galley only. On March 9, 2015, DHS filed a motion for emergency change of custody after Dodd had allowed Galley to visit his home and spend the night with S.D. present, and Dodd had also tested positive for marijuana. The court granted the motion and held a probable-cause hearing on March 12, 2015. The court found that probable cause existed because Dodd had tested

positive for marijuana, and he admitted that he had allowed Galley to spend the night despite the fact he knew that she had been ordered to have no contact with the minor child.

Finding that Dodd was not credible and that he had continued using marijuana on a regular basis, the court changed the goal to termination in his case. DHS filed an amended petition for termination of parental rights alleging multiple grounds. A termination hearing was held on May 28, 2015, and Dodd testified that he had learned his lesson and would not speak to Galley again. On June 16, 2015, the circuit court entered an order terminating Dodd's parental rights to S.D. on the basis of subsequent factors and aggravated circumstances, specifically due to his continued drug use and contact with Galley, which was in direct violation of a court order. Dodd timely filed a notice of appeal.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). However, courts are not to enforce parental rights to the detriment or destruction of the health and well-being of a child. *Id*. An order terminating parental rights must be based upon a finding by clear and convincing evidence that (1) termination of parental rights is in the best interest of the children, considering the likelihood that the children will be adopted if the parents' rights are terminated and the potential harm caused by returning the children to the parents' custody, and (2) at least one ground for termination exists. *See* Ark. Code Ann. § 9-27-341(b)(3)(A) and (B).

We review termination-of-parental-rights cases de novo. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). However, we will not reverse the circuit

4

court's finding of clear and convincing evidence unless that finding is clearly erroneous. *See Albright*, *supra*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, considering the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id*. When determining the clearly erroneous question, the appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id*.

Dodd challenges the court's findings and argues that the evidence does not support any statutory ground for termination. The juvenile code provides nine different grounds that warrant termination. *See* Ark. Code Ann. § 9-27-341(b)(3)(B). But only one ground is needed to terminate parental rights. *Albright*, *supra*.

Here, the circuit court terminated Dodd's parental rights under Ark. Code Ann. § 9-27-341(b)(3)(B)(vii), which provides as a ground for termination that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate the return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Dodd's failure to follow the circuit court's orders and his continued drug use were the subsequent factors. His failure to follow the orders designed to achieve S.D.'s permanent placement demonstrated an incapacity or indifference to remedy the situation. These failures,

coupled with his continued illegal drug use, are sufficient to support a subsequent-factors

finding. *Cotton v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 455, at 11–12, 422 S.W.3d

130, 137–38.

The circuit court also terminated Dodd's rights pursuant to the aggravated-

circumstances ground. For termination on that ground, the court must find that

> (ix)(a) The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
> . . . .
>
> (3)(A) Have subjected any juvenile to aggravated circumstances.
> (B) "Aggravated circumstances" means:
> (i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification;

Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A),(B)(i).

In support of his argument for reversal on this ground, Dodd relies on the failure of

DHS to provide appropriate services. However, based on the record before us, Dodd never

challenged the appropriateness of any DHS-offered reunification service. Also, he never

argued below that there were particular reunification services that DHS should have provided.

As such, Dodd failed to preserve this argument. We have long held that we will not consider

arguments raised for the first time on appeal. *See Ark. Dep't of Health & Human Servs. v. Jones*,

97 Ark. App. 267, 248 S.W.3d 507 (2007).

Dodd further challenges the circuit court's finding that the termination of his parental

rights was in S.D.'s best interest. The two factors to consider in determining best interest are

the likelihood of adoption and potential harm caused by returning the child to the custody

of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Dodd does not challenge the trial court's finding that S.D. is adoptable. He does, however, argue that the court erred in finding that his child would be subject to potential harm if returned to his custody. Dodd contends that there was no evidence presented that he had ever harmed S.D. nor was there any threat that he would do so in the future.

In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Welch v. Ark. Dep't. of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. The potential-harm analysis must be conducted in broad terms, including the harm the child suffers from the lack of stability in a permanent home. *See Lunon v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 647.

The circuit court found that Dodd's continued illegal drug use and the fact that he allowed Galley to visit S.D., even though such visits had been prohibited by court order, were enough to show potential harm. While the court noted that Dodd had made measurable improvements, he also blatantly disregarded and violated the circuit court's orders. We cannot say the trial court's findings with regard to potential harm were clearly erroneous. Accordingly, we affirm.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Dusti Standridge*, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.